# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| KENNETH K. KALISH, | Civil No. 05-933 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER ON DEFENDANT'S SUMMARY JUDGMENT MOTION** |
| HIGH-TECH INSTITUTE, INC., | |
| Defendant. | |

Cynthia Rowe, **ROWE LAW OFFICES**, 7701 France Avenue South, Suite 200, Minneapolis, MN 55435, for plaintiff.

Marko J. Mrkonich, Bryan N. Smith and Andrew Voss, **LITTLER MENDELSON, PC**, 1300 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402-2136, for defendant.

Defendant, High-Tech Institute, Inc., employed plaintiff, Kenneth K. Kalish, to teach students at defendant's post-secondary career school. Defendant terminated plaintiff in August 2003, allegedly for cursing in front of students and because of his generally abrasive attitude toward students. Plaintiff brought this action against defendant for age and disability discrimination. Defendant moves for summary judgment on both claims. For the reasons stated below, the Court grants in part and denies in part defendant's motion. The Court grants the motion as to the disability discrimination claim, but denies it as to the age discrimination claim.

## BACKGROUND

Defendant High-Tech Institute is an educational institution comprised of numerous accredited schools in campuses across the country. Defendant offers a variety of degree and diploma programs to students seeking an education in health care and information technology industries. Defendant hired plaintiff Kenneth Kalish as a General Education Instructor at its Brooklyn Center, Minnesota campus in January 2002. Throughout his employment with defendant, plaintiff was supervised by Shawn Magner. Plaintiff also reported to Director of Education David Wahl and Campus Director Todd Brown.

Plaintiff was 56 years old when defendant hired him, and he started his employment with defendant with some medical problems. Plaintiff suffered a head injury while fighting in the Vietnam War. His head injury has caused myoclonic seizures and severe sneezing fits, but he now takes medication that greatly reduces these problems. Plaintiff suffers from these problems several times each month, but there are no activities that he cannot pursue as a result of the seizures. Plaintiff asserts that the seizures and sneezing fits affect his sleep, however, which in turn impacts his overall mental functioning. In addition, plaintiff had two strokes prior to his employment by defendant – one in 1993 and the second in 1997. Plaintiff asserts that his 1997 stroke made it difficult for him to recall names. In addition, he asserts that he suffers from occasional and temporary memory loss, which limits his ability to write and process written communication. As an example, he explains that he now requires the use of a computer to catch spelling errors.

Plaintiff had his third stroke on June 14, 2003, during his employment with defendant.   As a result of the 2003 stroke, plaintiff suffered from partial blindness in his right eye and lost most of his peripheral vision.   His vision problems continued throughout the remainder of his employment with defendant, and limited his ability to read and handle paperwork.   To prevent additional strokes, his doctors required him to eliminate physical exertion.   His vision problems cleared up after his termination and his physical exertion restrictions have since been lifted.

Within the first month of plaintiff's employment, he acknowledged receipt of several of defendant's policies.   Plaintiff signed the "Academic Freedom Policy," which expressly prohibits instructors from swearing in the classroom or toward students and provides that violations could result in termination.   Plaintiff admits that he swore in front of students on occasion.   Magner testified that Brown and Wahl told him that students had complained to them about plaintiff's cursing in the classroom.   Defendant also points to two written student complaints in plaintiff's personnel record as evidence of plaintiff's alleged abrasive attitude toward students.[1]

Plaintiff asserts that he was only told once that his cursing was a problem, and that he never received any other negative feedback from defendant.   Plaintiff also testified that he did not behave in a derogatory manner toward his students and never received feedback that students had issues with him.   Plaintiff points to the testimony of several

---

[1] The first letter states that plaintiff asked a student to leave the classroom when that student refused to take his or her head off the desk.   The other asserts that plaintiff had an abrasive attitude toward students, and provides several specific examples.   Both letters are unsigned.

colleagues, who testified that they believe plaintiff was a good instructor. Their testimony is based in part on comments they heard from his students.

Plaintiff also testified that Magner began treating him differently after his stroke and regularly impressed upon plaintiff that his medical appointments were problematic. Plaintiff also testified that Magner made jokes about his medical impairment and belittled him when he had to use a chair to transport his textbooks because of his physical restrictions. Several of plaintiff's colleagues also testified that Magner treated plaintiff differently after his stroke, and that Magner made clear that plaintiff's medical appointments were problematic.

Plaintiff testified that defendant consistently treated older instructors disrespectfully, while defendant treated younger employees with respect and gave them preferential treatment. For example, he asserts that younger employees were allowed to bend rules, were not supervised as closely, and did not have to work as many hours but were paid the same. Several of Kalish's colleagues offer similar testimony. Plaintiff testified that Magner regularly referred to him as the "old man," and made other comments derogatory to older people. For example, he once asked plaintiff if he knew Lincoln personally, and commented that "senior citizens" are inventive when plaintiff used a chair to transport items at a company picnic. Magner also allegedly asked plaintiff if plaintiff could handle teaching the morning shift given that "[o]ld people need more rest." One of plaintiff's colleagues also testified that Magner regularly referred to the older instructors as "old staff."

In August 2003, Brown informed Magner that he had received another student complaint about plaintiff cursing in class.  According to defendant, based on plaintiff's cursing and student complaints about his abrasive attitude, Brown directed Magner to terminate plaintiff.  Magner testified that he did not want to terminate plaintiff because the termination would greatly increase Magner's workload.

On February 17, 2004, plaintiff filed a charge with the Minnesota Department of Human Rights, alleging that defendant discriminated against him based on his age and disability, in violation of the Minnesota Human Rights Act ("MHRA"), and that defendant defamed him in connection with his termination.  The Department issued a No Probable Cause finding, and plaintiff filed this lawsuit on April 29, 2005, alleging identical causes of action.  Plaintiff later voluntarily dismissed his defamation claim. Defendant now moves for summary judgment on the remaining claims.

## ANALYSIS

## I.      STANDARD OF REVIEW

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all

reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.    DISABILITY DISCRIMINATION

The MHRA prohibits discrimination by an employer "because of" the employee's disability.  Minn. Stat. § 363A.08, subd. 2(b).  The basic burden-shifting framework established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), applies to disability discrimination claims under the MHRA.  *Snow v. Ridgeview Med. Ctr.*, 128 F.3d 1201, 1205 (8th Cir. 1997); *Sigurdson v. Carl Bolander & Sons, Co.*, 532 N.W.2d 225, 228 (Minn. 1995).  Under this framework, the plaintiff must first prove a prima facie case of disability discrimination, after which the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for its actions.  *Allen v. Interior Constr. Servs., Ltd.*, 214 F.3d 978, 981 (8th Cir. 2000).  If the defendant meets this burden, then the plaintiff must submit evidence showing that defendant's stated reason is a mere pretext for unlawful discrimination.  *Id.*   To establish a prima facie case, the plaintiff must show (1) he has a disability within the meaning of the MHRA, (2) he is qualified to perform the essential functions of his job, with or without reasonable accommodation, and (3) he suffered an adverse employment action because of his disability.  *Liljedahl v. Ryder Student Transp. Servs.*, 341 F.3d 836, 841 (8th Cir. 2003).

Plaintiff must first show that he has a disability.  Under the MHRA, a person may be disabled if he (1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such an impairment; or (3) is

regarded as having such an impairment.   Minn. Stat. § 363A.03, subd. 12.   When
analyzing whether a plaintiff's condition materially limits a major life activity, Minnesota
courts look to federal standards under the Americans with Disabilities Act that require the
plaintiff to demonstrate that, as compared to an average person, the plaintiff is: 1) unable
to perform a basic function, or 2) significantly restricted in the condition, manner, or
duration under which an individual can perform a particular major life activity.  *Snow*,
128 F.3d at 1207;  *see* 29 C.F.R. § 1630.2(j).   The factors considered in determining
whether a person is materially limited are: (1) the nature and severity of the impairment;
(2) the duration or anticipated duration; and (3) its long-term impact.   29 C.F.R.
§ 1630.2(j)(2)(i-iii).   "Only a permanent or long-term condition will suffice."   *Mellon v.
Fed. Express Corp.*, 239 F.3d 954, 957 (8th Cir. 2001).

Plaintiff argues that he was materially limited in the major life activities of seeing,
thinking, remembering, and learning, and materially limited in his ability to care for
himself.   He alleges that during his employment with defendant he had vision problems
and difficulty reading as result of his stroke.   In addition, he was restricted from physical
exercise or lifting that would result in heavy breathing.   He also points to his seizures and
excessive sneezing, and the fact that he has difficulty hearing softly spoken people.

The Court concludes that plaintiff is not materially limited in any major life
activities.[2]   To begin, plaintiff's vision problems and physical exertion restrictions do not
make him disabled.   These conditions were resolved after plaintiff was terminated, and

---

[2] There is also no evidence that defendant "regarded" plaintiff as a disabled person.

therefore cannot qualify as permanent or long-term conditions.  *See Mellon*, 239 F.3d at 957.  Next, his seizures and sneezing episodes cannot qualify as a disability because they were largely corrected with medication. *See Sutton v. United Airlines*, 527 U.S. 471, 483 (1999) (holding that an impairment that is corrected by mitigating measures does not substantially limit a major life activity).  Only plaintiff's difficulty hearing people remains, and the Court finds that under the circumstances here, this condition is a minor inconvenience rather than a material limitation.  *See Kinzer v. Fabyanske, Westra & Hart, P.A.*, 2001 U.S. Dist. LEXIS 17537, at *9 n.5 (D. Minn. Sept. 19, 2001).  Indeed, plaintiff admits that he has been able to cope with this problem by asking people to speak more loudly.

Because plaintiff has failed to prove a prima facie case of disability discrimination, the Court grants defendant's motion for summary judgment on this claim.

## III.   AGE DISCRIMINATION

Courts apply the *McDonnell Douglas* burden-shifting framework to claims of age discrimination as well.  *Snow*, 128 F.3d at 1207; *Sigurdson v. Isanti County*, 408 N.W. 2d 654, 657 (Minn. Ct. App. 1987).  To establish a prima facie case of age discrimination, the plaintiff must show (1) that he is within the protected class; (2) that he was qualified to perform his job; (3) that he suffered an adverse employment action; and (4) that similarly situated younger workers were not treated the same.  *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156-57 (8th Cir. 1999).  The burden then shifts to the employer to demonstrate a legitimate, nondiscriminatory reason for the adverse

employment action.  *Id.*  If the employer articulates such a reason, the plaintiff must then demonstrate that the employer's stated reason is pretextual and that the real reason for the employer's adverse employment action was unlawful age discrimination.  *Id.*

It is undisputed that plaintiff, at age 57, is within a protected class.  The parties dispute, however, the remaining elements of the prima facie case.

Defendant argues that plaintiff was not qualified because he cursed in class and had an abrasive attitude toward students.  Plaintiff has produced evidence to the contrary by his own testimony and that of his colleagues.  Viewing the facts in the light most favorable to plaintiff, as the Court must in the context of defendant's motion for summary judgment, the Court concludes that a factfinder could find that plaintiff was qualified for his position and performed the essential functions of his job.

Defendant argues that plaintiff cannot prove that similarly situated younger workers were treated differently. The parties agree that plaintiff was replaced with a younger worker, and that defendant paid the younger worker more than plaintiff. Defendant asserts that the younger worker's credentials made her particularly attractive and defendant offered her a higher than normal salary to lure her to the position.  On the other hand, plaintiff provides evidence that the younger worker's qualifications were inferior to plaintiff's qualifications.  Plaintiff also asserts that younger workers were treated "more respectfully" than older workers.  Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. at 20.  Plaintiff submitted affidavits from himself and his colleagues that younger workers were allowed to take more breaks, were not required to follow company policy as closely, received important information about company developments, were not

required to keep detailed records, were not required to work the same number of hours, and were not required to hold tutoring sessions.[3]   Based on the evidence presented by plaintiff, the Court concludes that a reasonable jury could find that plaintiff was treated differently than similarly situated younger workers.

While the parties do not dispute that plaintiff suffered an adverse employment action when he was terminated, defendant argues that treating younger workers "more respectfully" is not an adverse employment action.   An employee suffers an adverse employment action when there is a "tangible change in duties or working conditions" constituting "a material employment disadvantage."   *Baucom v. Holiday Cos.*, 428 F.3d 764, 767 (8th Cir. 2005) (citing *Burchett v. Target Corp.*, 340 F.3d 510, 518 (8th Cir. 2003)).   Cuts in pay or benefits are significant enough to meet the standard, as would circumstances amounting to a constructive discharge, but minor changes in duties or working conditions do not meet the standard.   *Id.*   The Court agrees that several of the examples of disparate treatment cited by plaintiff do not qualify as adverse employment actions.   Plaintiff's allegation that younger workers were allowed to work fewer hours for the same amount of pay, however, is a material employment disadvantage.   As such, the Court concludes that plaintiff has established a prima facie claim of age discrimination.

---

[3] In addition, plaintiff argues that younger instructors who also cursed in the classroom were not terminated, but he offers no evidence that defendant knew that the other instructors swore in the classroom.   Without defendant's knowledge of the behavior, the other teachers are not similarly situated in this respect.

Defendant asserts a legitimate, non-discriminatory reason for terminating plaintiff, namely, that plaintiff repeatedly cursed in the classroom, and had an abrasive attitude toward students.   Defendant also offers a legitimate, non-discriminatory reason for paying plaintiff less than the younger worker who replaced him.   As explained above, defendant asserts that the younger worker's salary was in line with her qualifications.[4]

A plaintiff may sustain the burden to establish pretext "either directly by persuading the court that a discriminatory reason likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Sigurdson v. Isanti County*, 386 N.W.2d 715, 720 (Minn. 1986).   Plaintiff's colleagues testified that plaintiff was a good teacher and that he cared for his students. Plaintiff also presents evidence that discredits defendant's explanation for paying a higher salary to the younger worker who replaced plaintiff, including testimony that the younger worker was less experienced.   These facts are sufficient to discredit defendant's explanation for his termination.   Plaintiff also has evidence that Magner regularly made age-based comments, such as referring to plaintiff as the "old man."   The age-based comments of Magner are not evidence that defendant's stated reason for terminating plaintiff were pretextual because it is undisputed that the decision to terminate plaintiff was made by Brown.   *See Floyd v. State Dep't of Soc. Servs*., 188 F.3d 932, 937-38 (8th Cir. 1999) (explaining that stray remarks in the workplace, unrelated to the termination

---

[4] Defendant does not specifically address plaintiff's allegation that younger workers were required to work less hours for the same amount of pay.   The Court assumes that defendant disputes this allegation, and concludes that this is another fact dispute that must be resolved by the jury.

decision, cannot provide evidence of pretext).   However, these statements do provide evidence that age may have influenced defendant's alleged practice of allowing younger employees to work fewer hours at the same pay.   In sum, the Court concludes that the evidence presented by plaintiff creates a genuine issue of material fact as to whether age discrimination occurred.

Accordingly, defendant's motion for summary judgment is denied on this claim.

This case will be placed on the Court's next available trial calendar.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Docket No. 14] is **GRANTED in part** and **DENIED in part** as follows:

1.    Defendant's motion is **GRANTED** as to plaintiff's claim of disability discrimination (Count 1 of the Complaint).  This claim is **DISMISSED with prejudice.**

2.    Defendant's motion is **DENIED** as to plaintiff's claim of age discrimination (Count 2 of the Complaint).


DATED:    September 26, 2006                  _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                            JOHN R. TUNHEIM
                                                 United States District Judge